IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| JOSHUA JAMES MEADOWS,<br>Institutional ID No. 159281,<br><br>Plaintiff,<br><br>v.<br><br>LUBBOCK COUNTY SHERIFF'S DEPARTMENT, *et al.*,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | No. 5:25-CV-172-BV |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Pro se Plaintiff Joshua James Meadows filed this civil-rights action under 42 U.S.C. § 1983, alleging that while he was detained at the Lubbock County Detention Center (LCDC), Defendants interfered with his ability to file grievances and would not let him pray in a group. Dkt. No. 3. Meadows failed to plead sufficient facts showing Defendants violated his constitutional rights, so United States District Judge should dismiss the claims under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).

**1. This case is subject to preliminary screening.**

Meadows originally filed this action in the Dallas Division of the Northern District of Texas, but because his allegations relate to events occurring at LCDC, the case was transferred to the Lubbock Division. Dkt. Nos. 3, 6. The United States District Judge granted Meadows leave to proceed *in forma pauperis* (IFP) and transferred the case to the undersigned magistrate judge for further proceedings, including preliminary screening

under §§ 1915 and 1915A. Dkt. Nos. 10–11. To conduct that screening, the undersigned has reviewed the complaint, authenticated records from LCDC, and Meadows's responses to a questionnaire pursuant to *Watson v. Ault*, 525 F.2d 886, 892–93 (5th Cir. 1976). Dkt. Nos. 3, 13, 20. However, Meadows's handwriting on the questionnaire responses is very difficult to read, and much of what can be deciphered is unresponsive to the question presented. *See, e.g.*, Dkt. No. 20 at 5, 10, 12.[1] Further, Meadows declined to attest that his questionnaire responses were true and correct. *Id.* at 16.

Meadows also submitted items that were docketed as public correspondence because they did not seek relief from the Court. Dkt. Nos. 9, 14–17. To the extent these documents might supplement or amend his claims, the undersigned has not considered them because Meadows neither sought leave of Court to file them nor are they proper amendments. *See generally* Fed. R. Civ. P. 20(a)(2)(A) & (B) (providing that defendants "may be joined in one action . . . if . . . any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the *same transaction, occurrence, or series of transactions or occurrences*; and . . . any question of law or fact common to all defendants will arise in the action" (emphasis added)); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007) (observing that "[u]nrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that this 50–claim, 24–defendant suit produced but also to ensure that prisoners pay the required filing fees . . . ."); *Hetep v. Warren*, 27 F. App'x 308, 309 (6th Cir. 2001) (concluding the

[1] Page citations to Meadows's questionnaire responses refer to the electronic page numbers assigned by the Court's electronic filing system.

district court did not abuse its discretion by denying plaintiff's motion to amend where plaintiff "sought to allege new, unrelated claims against new defendants").

### 2. Meadows alleges violations of his religious practice and due process rights at LCDC.

Meadows contends that on unspecified dates while he was in custody at LCDC, he was unable to file grievances at night, his handwritten grievances were not accepted, and the grievances he could file were not forwarded to the officer addressed. Dkt. Nos. 3 at 4; 20 at 1–6. Meadows also asserts that someone at LCDC threatened to "sanction" inmates who filed grievances using unauthorized methods or complained about an issue "not associated with [the] dep[artment]." Dkt. Nos. 3 at 4; 20 at 7. Although the Court asked Meadows to provide additional information regarding the individuals at LCDC who impeded the grievance process, he declined to do so. Dkt. No. 20 at 1 (stating that "[a]ll participating deput[ies] and supervisors in conjunction participating in this order to deny [sic all]"), 7 (responding that he does not know who posted the warning about using unauthorized forms). Meadows alleges that these grievance issues violated his due process rights. *See id.* at 3, 5.

Meadows further contends that an LCDC officer, "Glover," did not allow Meadows to pray in a group. Dkt. Nos. 3 at 4; 20 at 7. Meadows admits that the prayer group's size violated LCDC policy, which prohibits more than four inmates from sitting at a table together. Dkt. No. 20 at 8. Meadows acknowledges he was permitted to pray in groups of four or fewer inmates. *Id.* Meadows declines to specify what religion he practices, and he does not explain how the denial of prayer in groups of more than four

impacted the ability to practice his religion. *Id.* at 10. He contends, though, that such denial harmed his "ability . . . to explain Heaven or uplift another in knowledge that keeps them from Heaven."[2] *Id.* at 10–11.

For these alleged violations, Meadows names two Defendants in his complaint: (1) Lubbock County Sheriff's Department (Sheriff's Department); and (2) LCDC. Dkt. No. 3 at 1, 3. In his questionnaire responses, he also names Officer "Glover," along with all officers employed at LCDC. Dkt. No. 20 at 1, 7, 12. He seeks compensatory damages and injunctive relief. Dkt. No. 3 at 4.

**3. A complaint that fails to meet certain pleading standards must be dismissed.**

A court must dismiss a complaint filed *in forma pauperis* by a prisoner against a government entity or employee if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B) (2017); *see also* § 1915A(b) (applying section to any suit by a prisoner against certain governmental entities, regardless of whether the prisoner is proceeding *in forma pauperis*). An action is frivolous if it lacks an arguable basis in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint lacks an arguable basis in law if it embraces indisputably meritless legal theories. *See id.* at 327. It lacks an arguable basis in fact if it rests on clearly fanciful or baseless factual contentions. *Id.* at 328; *see also Denton v. Hernandez*, 504 U.S. 24, 32–33 (1992).

---

[2] Meadows signs his pleadings as "Rev. Joshua James Meadows." Dkt. No. 3 at 5

When analyzing a prisoner's complaint, a court may consider reliable evidence, such as the plaintiff's allegations, responses to a questionnaire, and authenticated prison records. *See Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (explaining that responses to a questionnaire are incorporated into the plaintiff's pleadings); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may dismiss prisoners' *in forma pauperis* claims as frivolous based on "medical and other prison records if they are adequately identified or authenticated" (internal quotation marks omitted)). Courts should accept well-pleaded factual allegations as true and should not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). Although pro se pleadings are held to less stringent standards than those prepared by lawyers, plaintiffs must still plead factual allegations "that raise the right to relief above the speculative level." *Id.*; *see also Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002) (reiterating that conclusory allegations will not suffice).

**4. Meadows's complaint should be dismissed.**

**A. Meadows does not seek a viable form of relief.**

Meadows seeks compensatory damages and an injunction. Dkt. No. 3 at 4. Neither form of requested relief is viable.

First, Meadows seeks compensatory damages without alleging a physical injury. *See* Dkt. Nos. 3, 20. Under the Prison Litigation Reform Act (PLRA), "[n]o Federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act."

42 U.S.C. § 1997e(e). The Fifth Circuit has held that this requirement "applies to all federal civil actions in which a prisoner alleges a constitutional violation." *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005) (per curiam); *see Mayfield v. Tex. Dep't of Crim. Just.*, 529 F.3d 599, 603, 605–06 (5th Cir. 2008) (affirming district court's grant of summary judgment in favor of defendants, where prisoner only sought compensatory damages and did not allege any physical injury regarding his claim that defendants violated his First Amendment right to freely exercise his religion). The application of § 1997e(e) is based on "the relief sought, and not the underlying substantive violation." *Geiger*, 404 F.3d at 375; *see Mayfield*, 529 F.3d at 605 (affirming that "the application of [§ 1997e(e)] turns on the relief sought by a prisoner" and "prevents prisoners from seeking compensatory damages for violations of federal law where no physical injury is alleged").

Meadoes does not claim that any of the alleged constitutional violations caused him physical injury. *See* Dkt. Nos. 3, 20. As a result, his claim for compensatory damages is not viable. *See, e.g.*, *Carter v. Hubert*, 452 F. App'x 477, 479 (5th Cir. 2011) (per curiam) (affirming district court's grant of summary judgment on prisoner's "First Amendment claim that the defendants denied him the right to freely exercise his religion by confiscating his Bible and other religious pamphlets because he [did] not allege that he suffered a physical injury that was more than de minimis"). The undersigned thus recommends that the district judge dismiss Meadows's claims for compensatory damages.

Second, the district judge should dismiss Meadows's claims for injunctive relief. To secure a permanent injunction, a plaintiff must demonstrate: (1) success on the merits of his case; (2) irreparable injury if the injunction is not granted; (3) any injury to the plaintiff outweighs any damage the injunction will cause the opposing party; and (4) the injunction will not have an adverse effect on the public interest. *Valentine v. Collier*, 993 F.3d 270, 280 (5th Cir. 2021). "Furthermore, a permanent injunction is appropriate only if a defendant's past conduct gives rise to an inference that, in light of present circumstances, there is a reasonable likelihood of future transgressions." *Id.* (internal quotation marks, brackets, and citation omitted).

Meadows has not established the third and fourth elements as to the grievances. That is, Meadows has not shown that any harm to him if the injunction is not granted outweighs the harm LCDC is likely to suffer if the Court requires it to accept grievances regardless of form and prevents it from disciplining inmates who do not file grievances in compliance with the rules. In addition, the public has a strong interest in ensuring that LCDC operates without Court interference in its day-to-day operations. *See Lewis v. Casey*, 518 U.S. 343, 362 (1996) (cautioning courts from becoming "enmeshed in the minutiae of prison operations" (quoting *Bell v. Wolfish*, 441 U.S. 520, 562 (1979)).

Moreover, as discussed below, Meadows has not established success on the merits of his claims. For these reasons, Meadows has not established that he is entitled to injunctive relief.

**B. LCDC and the Sheriff's Department are non-jural entities that lack the capacity to be sued.**

To sue a city, county, or municipal department, "it must enjoy a separate legal existence." *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991) (internal quotation marks and citation omitted); *see Ray v. Boone*, No. 24-40169, 2024 WL 4372692, at *1 (5th Cir. Oct. 2, 2024) (stating that the Fifth Circuit "has held that, under Texas law, a county or municipal department is a non-jural entity, meaning it cannot be sued directly"). "In Texas, county sheriff's and police departments generally are not legal entities capable of being sued, absent express action by the superior corporation (the county, in the case of the sheriff's department) 'to grant the servient agency with jural authority.'" *Jacobs v. Port Neches Police Dep't*, 915 F. Supp. 842, 844 (E.D. Tex. 1996) (quoting *Darby*, 939 F.2d at 313). In addition, an entity cannot be liable for the actions of its employees, e.g., the deputies or officers, because 42 U.S.C. § 1983 does not impose vicarious liability. *Bigford v. Taylor*, 834 F.2d 1213, 1220 (5th Cir. 1988).

The Court advised Meadows that the Sheriff's Department and LCDC were not suable entities and provided him with an opportunity to name other individual(s) in connection with his claims. Dkt. No. 20 at 12. Meadows did not name anyone else. *Id.* Because the Sheriff's Department and LCDC do not have the capacity to be sued, and because they cannot be vicariously liable for the acts of their employees, the undersigned recommends that the district judge dismiss with prejudice as frivolous any claims against them.

### C. Meadows fails to plead adequate facts to state a claim concerning any purported interference with the grievance process.

An inmate "does not have a federally protected liberty interest in having . . . grievances resolved to his satisfaction." *Geiger*, 404 F.3d at 374. Nor does he "have a protected liberty interest in the processing of his prison grievances." *Mahogany v. Miller*, 252 F. App'x 593, 595 (5th Cir. 2007) (per curiam); *see also Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (explaining that "[w]hen the claim underlying the administrative grievance involves a constitutional right, the prisoner's right to petition the government for redress is the right of access to the courts, which is not compromised by the prison's refusal to entertain his grievance."). An inmate is not "constitutionally entitled to an administrative grievance procedure." *Mayfield v. Wilkinson*, 117 F. App'x 939, 940 (5th Cir. 2004) (per curiam); *see Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 138 (Burger, J., concurring) (applauding prisons for adopting grievance procedures but noting that he "do[es] not suggest that the procedures are constitutionally mandated").

Meadows complains that he could not file grievances "during nighttime" or via handwritten correspondence (as opposed to using a tablet). Dkt. Nos. 3 at 4; 20 at 1–5.[3] He also claims that some grievances were not provided to the officers to whom he directed the complaints. Dkt. Nos. 3 at 4; 20 at 5. But he does not specify the content of these grievances nor allege any denial of the right to access the courts. *See* Dkt. Nos. 3 at

[3] Although difficult to read, Meadows's questionnaire response seems to indicate that he was able to file grievances and merely disagrees with the responses officials provided or the fact that officials denied his grievances. *See* Dkt. No. 20 at 3. If this is Meadows's complaint, it likewise does not withstand screening. *Geiger*, 404 F.3d at 374 (holding that a prisoner "does not have a federally protected liberty interest in having . . . grievances resolved to his satisfaction").

3–4; 20 at 1–5. Without more, Meadows's claims based on interference with the filing of grievances do not implicate a protected interest and therefore do not survive preliminary screening. *See, e.g.*, *Mahogany*, 252 F. App'x at 594–95 (affirming dismissal of prisoner's claim that defendants failed to process his grievances because he had no protected liberty interest in the grievance procedures); *Barela v. Underwood*, No. 3:18-CV-2353-G-BH, 2019 WL 4648262, at *8 (N.D. Tex. July 30, 2019) (Ramirez, M.J.) (recommending dismissal of plaintiff's claim that defendant interfered with the grievance process), *R. & R. adopted by* 2019 WL 4643587 (N.D. Tex. Sep. 23, 2019).

Moreover, requiring Meadows to comply with facility procedures—e.g., filing grievances through the tablet as opposed to handwritten—and enforcing those procedures via the threat of "sanctions" for noncompliance does not violate the Constitution. *See Frank v. Larpenter*, No. 99-31242, 2000 WL 1598076, at *2 (5th Cir. Oct. 3, 2000) (explaining that other circuits have held "that prison officials can impose reasonable punishment to enforce reasonable disciplinary requirements so long as the punishment is not for prior unproven conduct"); *Ordaz v. Lynaugh*, No. 93-4290, 1994 WL 144882, at *1 (5th Cir. Apr. 15, 1994) (explaining that even if prisoner "had a liberty interest in his use of the prison grievance procedures . . . , prison officials were still allowed to exercise discretion to limit the non-good faith use of the grievance system without impermissible intrusion on that liberty interest").

Thus, the undersigned recommends that the district judge dismiss Meadows's claims related to grievance interference.

**D. Meadows has failed to plead facts showing that Defendants violated his First Amendment rights.**

Meadows alleges that Officer Glover did not permit him to pray in a group in the LCDC dayroom. Dkt. Nos. 3 at 4; 20 at 7–8. Glover was apparently enforcing an LCDC policy that prohibits no more than four inmates at a dayroom table. *See* Dkt. No. 20 at 8. Meadows contends that this violated his religious rights. *See* Dkt. No. 3 at 3–4. The Court understands Meadows to asserting a First Amendment claim.

A prisoner's First Amendment rights are violated when he is not afforded "reasonable opportunity" to exercise his religious beliefs. *Davis v. Davis*, 826 F.3d 258, 265 (5th Cir. 2016) (quoting *Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam)); *Adkins v. Kaspar*, 393 F.3d 559, 564 (5th Cir. 2004) (explaining that "[t]he pertinent question is not whether the inmates have been denied specific religious accommodations, but whether, more broadly, the prison affords the inmates opportunities to exercise their faith" (citation omitted)). "Whether a prison regulation impermissibly encroaches upon a prisoner's First Amendment rights depends upon whether it is 'reasonably related to legitimate penological interests.'" *Butts v. Martin*, 877 F.3d 571, 584 (5th Cir. 2017) (quoting *Mayfield*, 529 F.3d at 607); *see O'Lone v. Est. of Shabazz*, 482 U.S. 342, 351–52 (1987) (holding that prison officials are not required to sacrifice legitimate penological objectives to accommodate inmates' religious practices).

Courts rely on the four-factor *Turner* test in determining the reasonableness of a prison regulation that allegedly impinges on a prisoner's religious rights. *See Adkins*, 393 F.3d at 564 (quoting *Turner*, 482 U.S. at 89–90). Those factors are:

> (1) whether a "valid, rational connection [exists] between the prison regulation and the legitimate governmental interest put forward to justify it," (2) whether there exist "alternative means of exercising the fundamental right that remain open to prison inmates," (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally," and (4) whether there is an "absence of ready alternatives" to the regulation in question.

*Id.* "[P]rison officials are entitled to substantial deference in the exercise of their professional judgment, and it is an inmate's burden to prove that a prison policy, as applied, is not reasonably related to legitimate penological objectives." *DeMarco v. Bynum*, 50 F.4th 479, 482 (5th Cir. 2022) (internal quotation marks and citation omitted).

Meadows's claim fails for several reasons. First, Meadows himself ascribes the denial of group prayer to be the result of an LCDC policy that prohibits more than four inmates at a table in the dayroom or common area. *See* Dkt. No. 20 at 8. Based on Meadows's allegations, the policy appears to be neutral and is not being enforced in a discriminatory manner. *See id.* And Meadows pleads no facts showing that the policy lacks a reasonable relationship a penological objective. *See* Dkt. Nos. 3 at 4; 20 at 7–11. Moreover, the Court can easily infer penological objectives for limiting the number of inmates at dayroom tables, such as, for example, to prevent fights, rioting, passing of contraband, and other things.

In any event, Meadows does not identify his religion, and he has not alleged facts showing that Officer Glover or any other officer's denial of larger group prayer led by inmates infringed on the practice of his religion. Meadows acknowledges that, despite the policy, he was able to "attend assembled group prayer." Dkt. No. 20 at 10. And he

admits that he was permitted to—and in fact did—congregate, pray, and study with three other inmates at a dayroom table. *Id.* at 8.

Because Meadows was afforded reasonable opportunities to exercise his unidentified religion and has not shown that the policy is unrelated to a penological objective, he cannot state a claim. *See, e.g.*, *DeMarco*, 50 F.4th at 482; *Freeman v. Tex. Dep't of Crim. Just.*, 369 F.3d 854, 861 (5th Cir. 2004) (emphasizing that "[t]he pertinent question is not whether the inmates have been denied specific religious accommodations, but whether, more broadly, the prison affords the inmates opportunities to exercise their faith"). Thus, the undersigned recommends dismissal of this claim.

**5. Recommendation**

For the reasons explained above, the undersigned recommends that the United States District Judge dismiss with prejudice Meadows's complaint and all claims asserted therein in accordance with 28 U.S.C. §§ 1915 and 1915A.

**6. Right to object**

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding, conclusion, or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Findings, Conclusions, and Recommendation where the disputed determination is found. An objection that merely incorporates by

reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: September 23, 2026.

Amy Burch
**AMANDA 'AMY' BURCH**
**UNITED STATES MAGISTRATE JUDGE**